IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


KERRY D. SUMMERS,
        Plaintiff,

v.                                                        Case No. 5:07cv28/RH/EMT

DONALD C. WINTER,
in his official capacity as
Secretary of the Navy,
        Defendant.
_____/

## ORDER, REPORT AND RECOMMENDATION

Pending before the court is Defendant's Motion for Summary Judgment and Motion to Strike Documents (Docs. 8, 16).  Plaintiff, proceeding pro se, filed a cross motion for summary judgment and response in opposition to Defendant's motion, as well as a reply to Defendant's statement of undisputed facts (Docs. 12, 13).  Upon consideration of the materials submitted by the parties and for the reasons stated below, it is the opinion of the undersigned that Defendant's Motion for Summary Judgment and Motion to Strike Documents should be granted.

I.      BACKGROUND

The following facts are without substantial controversy.[1]

----

[1] The court conveys as facts any documents submitted by Plaintiff or Defendant in support of their respective motions, to the extent they comply with the requirements for affidavits specified in Rule 56(e) of the Federal Rules of Civil Procedure.  *See, e.g.*, Woods v. Chicago, 234 F.3d 979 (7th Cir. 2000); Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980).  Specifically, the court conveys the following as facts:  information contained in Plaintiff's verified complaint (Doc. 1), facts contained in Defendant's affidavits and attachments in support of his motion for summary judgment (Doc. 9, Exs. 1, 4–5), any undisputed facts, and facts contained in Plaintiff's affidavits and attachments in support of his reply to Defendant's statement of undisputed facts that comply with Rule 56 (*see* Doc. 13).  As discussed more fully, *infra*, in Section II.B, the court will not consider information contained in two articles submitted by Plaintiff with his reply to Defendant's statement of undisputed facts (*see* Doc. 13), titled "Aging Factors and Retirement for Professors and Others" and "Supreme Court

At the time of the events giving rise to this cause of action, Plaintiff was 59 years old (Doc. 1).  He was employed by the U.S. Navy as a police officer from November 1998 through October 2006 (*id.*).  Plaintiff is no longer employed with the Navy (*id.*).  Employees at the Naval Support Activity, Panama City, Florida (NSA PC) during the time frame relevant to this action and pertinent to this action include:

> Plaintiff, Retired Police Officer, NSA PC
> Timothy Ivers, Retired Police Officer, NSA PC
> Michael Woullard, Supervisory Police Officer, NSA PC
> Allen Smith, Police Officer, NSA PC
> Philip Angermeier, Police Officer, NSA PC
> Hal Harris, Police Officer, NSA PC
> Charles A. Longo, Security Department Training Officer, NSA PC
> Patrick K. Hall, Security Department Director, NSA PC
> Lamar Carroll, Security Department Training Officer, NSA PC

(*see* Docs. 1, 9, Ex. 5).

From September 19, 2005 through September 23, 2005, Plaintiff attended Police Phase II Training at NSA PC (Doc. 1 at 4).  Police Phase II Training is conducted yearly, and for the years prior to September 2005, the training was based solely on "classroom and drivers training" (*id.*).  Charles Longo and Lamar Carroll conducted the September 2005 training session (*id.*).  The training requirements changed in September 2005 to include non-lethal weapons training (NLW), which includes training in hand-to-hand combat, training with the "Hand ASP" (baton), and training with chemical weapons (*id.*).  Plaintiff provided medical documentation that a dermatological condition precluded him from exposure to Oleresin Capsium (OC), also known as pepper spray; therefore, Plaintiff was excused from the OC portion of the training (Doc. 13).  Charles Longo told attendees that if they could not successfully complete the training, they could not properly perform their jobs (*id.*).  Plaintiff interpreted this statement to mean that he would lose his job if he could not successfully complete the training (*id.*).  Plaintiff was told that the training sessions were changed due to the Navy's response to the attacks at the World Trade Center on September 11, 2001 (Doc.

Lowers Employees' Burden to Prove Age Discrimination, Allows Disparate Impact Claims" (*id.* at 7–23, 31–33), nor will the court consider the witness statements of Timothy Ivers and Phillip Angermeier (*id.* at 34–37, 46–47), also submitted by Plaintiff in support of his reply to Defendant's statement of undisputed facts.  Plaintiff was advised of the Rule 56 requirements by order of this court before he filed his response to Defendant's motion for summary judgment and statement of undisputed facts (*see* Doc. 10).

5, Ex. 1 at 53).  Defendant submitted the sworn affidavits of Charles Longo[2] and Patrick K. Hall in

support of its motion for summary judgment (Doc. 9, Ex. 4–5).  In his sworn affidavit, Patrick K.

Hall, Security Director of NSA PC, describes the individual occupational training requirements for

the level GS-083 police officer, in pertinent part, as follows:

> I have read the Office of Personnel Management (OPM) Qualification Standards for
> General Schedule Positions: Individual Occupational Requirements for GS-083:
> Police Series.  Those Standards include a statement under Medical Requirements that
> 'the duties of these positions require moderate to arduous physical exertion and/or
> duties of a hazardous nature . . . Agencies may establish additional, job-related
> physical or medical requirements provided that the specific position(s) involves the
> arduous or hazardous duties to which the physical requirements relate.' . . . In my
> opinion and in my official capacity as the Security Director, I consider the ability of
> GS-083 Police Officers to successfully utilize NLW techniques as a crucial
> component of their official duties.  Police Officers can expect to encounter suspects
> or others requiring physical restraint.  The safety of the Police Officer, the suspect
> and members of the public in the vicinity mandates that the Police Officer know how
> to safely and effectively use NLW techniques.  The safety of fellow Police Officers
> depends, in part, upon the abilities of one's fellow Police Officers to successfully
> respond to restraint or detention scenarios.  Each Police Officer must be able to
> depend upon his fellow officer to be able to respond to a scenario with the full range
> of police techniques available.  An officer who cannot disarm a suspect places his
> fellow officers in jeopardy when the two officers are responding to a scene at the
> same time.  Even though the OPNAVINST 5530 series of instructions may not have
> expressly listed NLW training as required until the Jan 2007 edition of the
> OPNAVINST 5530.14D, the NLW training was considered essential to Police
> Officer job performance by me as the Security Director of NSA PC.[3]

(*id.*, Ex. 5 at 5–6).

In his verified complaint, Plaintiff explains that during the September 2005 training session,

he exerted maximum energy for several minutes while running from officer to officer  (Doc. 1 at 4).

Plaintiff was yelled at and punched throughout the course of the training (*id.*).  Plaintiff incurred

injuries to his legs, arms, neck, and back as a result of this training (*id.*).  All members of the NSA

PC Security Department who engaged in police officer duties were required to participate in the

---

[2]Although Charles Longo's affidavit complies with the requirements of Rule 56, the court did not find it
necessary to rely on any facts contained in the affidavit to resolve the instant motions.

[3]Patrick K. Hall became security director of NSA PC in June 2005 (Doc. 9, Ex. 5 at 1).

same level of training (Doc. 13 at 2).  In other words, no distinction was made on the basis of age, sex, or civilian or military status (*id*.).  Plaintiff, along with all of the participants in the training program, successfully completed the September 2005 training session (*id.* at 5).

On December 13, 2005, Plaintiff filed a Formal Discrimination Complaint with the Equal Employment Opportunity Commission Office (EEOC) for the Department of the Navy (*see* Doc. 1, attached Notice of Dismissal of Formal Discrimination Complaint).  Plaintiff alleged age discrimination based on the September 2005 training, which included the NLW component (*id*.).

In the Spring of 2006, Plaintiff applied for participation in the Voluntary Early Retirement/ Separation Incentive Program (VERA SIP), which is an early retirement option in which the employee receives a cash payment as a separation incentive for retiring early (Doc. 9, Ex. 5). Plaintiff was denied participation in the program (*id*.).  Although the exact date of the denial of Plaintiff's application is unknown, it is clear that it was denied while Plaintiff was still employed by the Navy (i.e., prior to his retirement) (*see id.* at 9).

In an effort to avoid enduring the vigorous training sessions again, Plaintiff retired in October 2006, earlier than he had planned (Doc. 1 at 4).  The EEOC dismissed Plaintiff's charge on November 6, 2006, finding that Plaintiff had failed to establish he was injured in fact as a result of the Navy's decision to increase training standards (*see* Doc. 1, attached Denial and Complainant's Right to File a Civil Action).  Additionally, the EEOC did not find that the increased training standards affected Plaintiff's terms, conditions, or privileges of employment (*id*.).

Plaintiff initiated the instant action on February 5, 2007, requesting that Defendant be directed to:  re-employ him, promote him, pay him the "back pay" that Plaintiff would have received had he not been forced to retire, pay him the salary he would have earned had he worked until the age of 65, prohibit any further violent training, and pay costs and fees involved in litigating this case (Doc. 1).

First, Plaintiff has raised a claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621, alleging that Defendant treated him differently based on his age, and thus discriminated against him in violation of the ADEA (*id*. at 3).  Specifically, Plaintiff alleges that Defendant increased the training requirements for police officers in September of 2005, to include NLW training, in order to discriminate against the older

police officers.  Both disparate treatment and disparate impact claims are now available under the ADEA, and any potential claims asserted by Plaintiff will be addressed under each of these theories.

Second, in light of Plaintiff's pro se status, the court will construe Plaintiff's complaint as additionally alleging a claim of retaliation under Title VII, 42 U.S.C. § 2000e-3(a).  Construing Plaintiff's complaint liberally, the court will address whether Defendant retaliated against Plaintiff by denying him participation in VERA SIP after Plaintiff filed an EEOC complaint.

II.     DISCUSSION

        A.      Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  "[T]he substantive law will identify which facts are material" and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  See id.

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial.  See Anderson, 477 U.S. 249.  A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.  See id. " If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust Co. v. Fidelity and Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993).  The court is not obliged, however, to deny summary judgment for the moving party when the evidence favoring the nonmoving party is "merely colorable or is not significantly probative." Anderson, 477 U.S. at 249–50, 106 S. Ct. at 2511.  "A mere 'scintilla' of evidence

supporting the . . . [nonmoving] party's position will not suffice" to demonstrate a material issue of genuine fact that precludes summary judgment.  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (quoting Anderson, 477 U.S. at 252, 106 S. Ct. at 2512).

B.    Defendant's Motion to Strike Documents

Defendant has filed a motion to strike two documents submitted by Plaintiff in support of his opposition to Defendant's motion for summary judgment and his reply to Defendant's undisputed facts (Doc. 16).  The first is an article entitled "Aging Factors and Retirement for Professors and Others" written by Professor Ronald M. Faust (Doc. 13 at 7–23).  This article is a paper explaining that tenured professors should not be exempt from ADEA protection and offering several theories as to why older employees are often subjected to age discrimination (id.).  The second is an article entitled "Supreme Court Lowers Employees' Burden to Prove Age Discrimination, Allows Disparate Impact Claims" written by Todd Steenson, a partner in the law firm of Holland and Knight, L.L.P., explaining how a recent Supreme Court decision, Smith v. City of Jackson, MS, 544 U.S. 228, 125 S. Ct. 1536 (2005), authorizes employees to raise disparate impact age discrimination claims (id. at 31–33).  In this article, Mr. Steen explains the background of the Supreme Court case and opines that the Court has made it easier for employees over the age of 40 to sue under the ADEA because now, pursuant to Smith, employees do not have to prove intentional discrimination, only that the act had a disparate impact on a group of people (id.).  Defendant contends that the articles are inadmissible hearsay and contain irrelevant facts (see Doc. 16).

The general rule regarding the consideration of hearsay statements included in verified pleadings, affidavits, documents, and other materials submitted pursuant to Rule 56 is that inadmissible hearsay, meaning out-of-court statements presented for the purpose of establishing the truth of the content of the statement and that does not fall within an exception to the hearsay rule, may not be considered on a motion for summary judgment.  Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999) (citation omitted).  The court may consider a hearsay statement if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form."  Id. at 1323 (quoting Wright v. Southland Corp., 187 F.3d 1287 (11th Cir. 1999); Pritchard v. Southern Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996); McMillian v. Johnson, 88 F.3d 1573, 1584–85 (11th Cir. 1996)).  Thus,

the out-of-court statement made to the witness (the Rule 56(c) affiant or the deposition deponent) must be admissible at trial for some purpose.  For example, the statement might be admissible because it falls within an exception to the hearsay rule, [FN14] or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted, [FN15] or is used solely for impeachment purposes (and not as substantive evidence). [FN16]

*Id.* at 1323–24 (footnotes omitted).

In addressing the admissibility of documents in support of motions seeking or opposing summary judgment, courts routinely hold that materials such as newspapers and periodicals cannot be considered when resolving a motion for summary judgment.[4]  In the instant case, the paper written by Dr. Faust and the article written by Mr. Steenson do not constitute materials which may be considered on a motion for summary judgment because they contain hearsay for which no exception exists.  Therefore, Defendant's motion to strike will be granted.

Additionally, although not the subject of Defendant's motion to strike, the court notes that Plaintiff submitted statements of Timothy Ivers and Philip Angermeier with his reply to Defendant's statement of undisputed facts (Doc. 13).  These statements do not constitute materials which may be considered on a motion for summary judgment under Rule 56 because a supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.  Unsworn statements, even from pro se parties, "should not be considered in determining the propriety of summary judgment." Wells v. Cramer, No. 07-10354, 2008 WL 110088, at *3, (11th Cir. Jan. 11, 2008) (quoting Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980)).  Federal law does provide an alternative to making a sworn statement, but requires that the statement include a handwritten averment, signed and dated, that the statement is true under the penalties of perjury.  28 U.S.C. § 1746.  The statement of Timothy

---

[4]*See, e.g.,* Smith v. Village of Garden City, 592 F. Supp. 637 (E.D.N.Y. 1984) (a newspaper article describing statements made by a police department that it viewed all blacks entering the city as suspicious and that it had a policy of stopping suspicious people and running their names through a computer to determine if they were wanted on outstanding arrest warrants could not be considered on a motion for summary judgment); De La Cruz v. DuFresne, 533 F. Supp. 145 (D.C. Nev. 1982) (copies of newspaper articles attached to memoranda of points and authorities were hearsay and could not be considered on motion for summary judgment); U.S. v. An Article of Food Consisting of Cartons of Swordfish, 395 F. Supp. 1184 (S.D.N.Y. 1975) (articles which had appeared in Harvard Law Review, New York Times, the Daily News, and a medical publication, none of which were based upon personal knowledge of any matters in dispute and none of which were sworn, were insufficient to raise an issue which would defeat summary judgment.)

Ivers is not sworn and does not include an averment that the statement is true under the penalties of perjury.  Similarly, the statement of Philip Angermeier fails to comply with Rule 56 because his statement is not sworn and does not include the requisite averment.  Although Mr. Angermeier's statement is notarized, the notary stamp alone — without any language indicating that the contents of the statement are true and that the statement is signed subject to the penalties for perjury — is not sufficient to qualify the statement as one the court may consider on a motion for summary judgment. Therefore, the statements of Timothy Ivers and Philip Angermeier will not be considered in resolving the instant motions for summary judgment.

       C.    <u>Age Discrimination in Employment Act</u>

Plaintiff's allegation of age discrimination appears to be based on the newly implemented NLW training requirements required of all police officers, including Plaintiff.  The court will analyze his claim as asserting claims of both disparate treatment, which can be established by either direct or circumstantial evidence, and disparate impact.[5]

       1.    Disparate Treatment

       a.    Direct Evidence of Age Discrimination

Plaintiff may prove that he was discriminated against due to his age either by presenting direct evidence or circumstantial evidence of discrimination.  Direct evidence of discrimination is evidence which reflects "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." <u>Carter v. Three Springs Residential Treatment</u>, 132 F.3d 635, 641 (11th Cir. 1998) (quoting <u>Caban-Wheeler v. Elsea</u>, 904 F.2d 1549, 1555 (11th Cir. 1990)).  Stated another way, the evidence must indicate that the complained-of employment decision was motivated by the decision-maker's ageism.  "Direct evidence is evidence which itself proves the existence of discrimination and does not require inference or interpretation, as for example a frank admission from a manager that he refused to hire an applicant because he was black or because she was female." <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 724 n.15 (11th Cir. 2004).  As a result, direct evidence is "encountered only infrequently," and "only the most blatant remarks, whose intent could be nothing

---

[5]<i>See</i> <u>Smith v. City of Jackson, Miss.</u>, 544 U.S. 228, 125 S.Ct. 1536 (2005) (determining that a disparate impact claim can be brought under the ADEA).

other than to discriminate on the basis of age will constitute direct evidence of discrimination." *Id.*; Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).

In the instant case, Plaintiff has presented no direct evidence of discrimination.  In fact, he testified in his deposition that he was told by a superior  "that my 27 years and my age didn't matter to them" (Doc. 5, Ex. 1 at 54).  This statement would appear to be direct evidence that Plaintiff's age was **not** a factor in Defendant's decision to increase the level of training to include NLW training.

b.     Circumstantial Evidence of Age Discrimination

In evaluating age discrimination claims based on circumstantial evidence, Plaintiff must prove that he was: (1) a member of the protected group of persons between the ages of forty and seventy; (2) he was subject to an adverse employment action; (3) he was qualified to perform the position; and (4) he was replaced by a substantially younger person or similarly situated younger employees were treated more favorably.  *See* Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998) (citations omitted); McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Chapman v. AI Transport, 229 F.3d 1012, 1024–25 (11th Cir. 2000); Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1313–14 (11th Cir. 1994).  After Plaintiff proves a prima facie case of discrimination, Defendant need only produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action.  *See* McDonnell-Douglas Corp. at 802; Chapman, 229 F.3d at 1024–25; Armstrong, 33 F.3d at 1313–14.  The presumption of discrimination is then rebutted and the employer is entitled to summary judgment unless Plaintiff proffers evidence sufficient to create a genuine issue of material fact for the challenged action.  Chapman, 229 F.3d at 1024–25.  Although intermediate evidentiary burdens shift back and forth under this framework, "the ultimate burden of persuading the trier of fact that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff."  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d  207 (1981).  Thus, the McDonnell-Douglas presumption places the burden of producing an explanation to rebut the prima facie case —  i.e., the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason" on Defendant.  *Id.* at 1094.  Defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination

was not the cause of the employment action.  *Id.* at 254–55, and n.8; 101 S. Ct. at 1094–95, and n.8. If such reasons are identified, Plaintiff then bears the burden of proving them to be a pretext for age discrimination.  *See* Turlington, 135 F.3d at 1432.  The Eleventh Circuit has repeatedly and emphatically held that a Defendant may terminate an employee for a good or bad reason without violating federal law.  *See* Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

> **(1)     Plaintiff has demonstrated that he was a member of the protected group of persons aged forty to seventy.**

In this case, Plaintiff meets the first requirement of the McDonnell-Douglas analysis because he was 59 years old at the time he participated in the training at NSA PC and was within the age group protected by the ADEA (Doc. 1 at 3).

> **(2)     Plaintiff has not demonstrated that he was subjected to an adverse employment action.**

"An adverse employment action [for the purposes of an age discrimination claim] is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) (internal quotations and citations omitted).  "[The Eleventh Circuit] has never adopted a bright line test for what kind of effect on the plaintiff's 'terms, conditions, or privileges' of employment the discrimination must have for it to be actionable; nor would such a rigid test be proper." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001) (citing Gupta, 212 F.3d at 586).  "It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Id.* (citing Wideman v. Walmart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998); Wu v. Thomas, 996 F.2d 271, 273–74 (11th Cir. 1993)).  "Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." *Id.* at 1239; *see also* Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979) ("Since the ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace, [where] the language of [the ADEA] is almost [identical] with [Title VII],  . . . we may properly conclude that Congress intended that the construction of [the ADEA] should follow that of [Title VII].")

The Eleventh Circuit has stated generally that "[t]o prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment." <u>Davis</u> at 1239–40. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1240 (citing <u>Doe v. Dekalb County School Dist.</u>, 145 F.3d 1441, 1453 (11th Cir. 1998)). Because adverse employment action is a necessary element of a discrimination case, a plaintiff's failure to "present sufficient evidence for a reasonable jury to find that this element was met is fatal to [his] case." <u>Turlington</u>, 135 F.3d at 1432.

Here, Plaintiff has not established that Defendant subjected him to an adverse employment action on the basis of being subjected to more rigorous training. Although Plaintiff was required to undergo a new type of training to maintain his position as a police officer, this did not materially alter the terms of his employment. First, Plaintiff was already required to undergo yearly training; the new training was simply more rigorous.[6] Second, the training occurred only once each year and lasted only five days (two and one-half days of which were in the classroom (*see* Doc. 9 ¶ 20, Doc. 13 at 5)). In other words, the other 359 days of Plaintiff's yearly employment remained substantially the same. Thus, Plaintiff has not demonstrated that a "serious and material" change in the terms, conditions, or privileges of his employment occurred.

To the extent Plaintiff contends he was constructively discharged, which can constitute an adverse employment decision for the purposes of Title VII claims, *see* <u>Poole v. Country Club of Columbus</u>, 129 F.3d 551, 553 (11th Cir. 1997), Plaintiff has similarly failed to establish a prima facie case. Under the doctrine of constructive discharge, "[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer . . . is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." <u>Young v. Sw. Sav. and Loan Assoc.</u>, 509

---

[6]Although Plaintiff alleged in his complaint that training prior to 2005 consisted of "classroom and drivers training," he does not describe the precise nature of the pre-2005 training. He has, however, submitted the job description of his position ("Police Officer GS-0083-05"), which indicates that the "incumbent is subject to an annual <u>physical</u> examination [and] is required to successfully complete an annual <u>physical</u> stamina test" (Doc. 13 at 28) (emphasis added).

F.2d 140, 144 (5th Cir. 1975) (citations omitted); *accord* Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003) (citing Poole, 129 F.3d at 553).  In deciding whether a constructive discharge has occurred, the Court will not consider common, nondiscriminatory hardships endured by every employee for their employer's gain.

Accordingly, the Eleventh Circuit sets a minimum threshold for constructive discharge claims. "[A] plaintiff's subjective feelings about his employer's actions" will not be considered.  DeKalb, 145 F.3d at 1450.  "Rather, we determine whether 'a reasonable person in [the plaintiff's] position would be compelled to resign.'" *Id.* (quoting Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311, 1317 (11th Cir. 1989)).  The Eleventh Circuit has defined a reasonable employee as one who does not "assume the worst" or "jump to conclusions too fast."  Garner v. Walmart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987) (affirming summary judgment in discrimination case where employee quit after one day in self-perceived unacceptable position).  Thus, "a constructive discharge claim does not present a jury issue unless a plaintiff produces substantial evidence that conditions were [objectively] intolerable."  Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002) (citing Hill v. Winn Dixie Stores, Inc., 934 F.2d 1518, 1526–27 (11th Cir. 1991)).  "Before finding a constructive discharge, [the Eleventh Circuit] has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable'."  Hill, 934 F.2d at 1527.  The threshold for establishing constructive discharge "is quite high."  Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001) (holding that being berated in public was not sufficient to show constructive discharge). *Compare* Fitz, 348 F.3d at 977–78 (being reprimanded and hearing from coworkers of management's intent to fire were insufficient to show constructive discharge) *and* Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001) (receiving poor evaluations was not sufficient to establish constructive discharge) *with* Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1015 (11th Cir. 1994) (holding court's finding of constructive discharge was supported by evidence of plaintiff being placed on probation, receiving unjustified work evaluations, and being repeatedly screamed at so that supervisor's "spit was flying in [plaintiff's] face") and Poole, 129 F.3d at 552 (holding that summary judgment for defendants was inappropriate where plaintiff was relieved of all responsibilities and was given a chair with no desk, and other employees were instructed not to speak to her).

Here, it cannot be said that Defendant made Plaintiff's working conditions so intolerable that he was forced into an involuntary resignation.  Although Plaintiff alleges he suffered "injuries to [his] legs, arms, neck, and back" (Doc. 1 at 4), he provided no further description of the injuries he sustained, and he failed to submit any documentation regarding the nature and extent of his injuries, such as medical records, photographs, or any other documentation.   Thus, he has failed to demonstrate that the new training caused injuries that were "so intolerable" he was forced to resign. Additionally, Plaintiff passed the training, indicating that it was not intolerable, too rigorous, or beyond Plaintiff's capabilities.[7]   Moreover, having passed the training, Plaintiff maintained his current position for over one year, and he has alleged no decrease in his wage or salary, a less distinguished title, a material loss of benefits, or any significantly diminished material responsibilities.  Because Plaintiff's conditions of employment were not objectively intolerable, that is, there was no objectively reasonable opportunity to remain employed, he has failed to show a disputed issue of material fact regarding whether he was constructively discharged.

Additionally, courts have held that constructive discharge cannot be established unless there is a showing of intentional discrimination.  Thus, even if an employee's working conditions are so intolerable that he is forced to quit, there is no liability under the anti-discrimination laws without proof of discrimination.  See Bennington v. Caterpillar, Inc., 275 F.3d 654, 660 (7th Cir. 2001) (holding, in the context of a summary judgment motion, that no constructive discharge existed where there was no evidence linking intolerable conditions to a discriminatory animus).  For reasons discussed more fully below, Plaintiff cannot establish that the training requirements were imposed for discriminatory reasons.

Thus, the undersigned concludes that Plaintiff was not subjected to an adverse employment action under the ADEA.[8]

---

[7]Notably, Plaintiff was excused from the OC portion of the training after he advised that a physical condition made him incapable of participating in that portion of the training.  In other words, the OC training could have arguably been intolerable, but Plaintiff was excused from that training at his request.

[8]Even if the undersigned's conclusion is incorrect, and Plaintiff indeed suffered an adverse employment action, Plaintiff cannot satisfy the fourth requirement of the McDonnell-Douglas standard (for the reasons discussed, infra), and correspondingly, he cannot establish a prima facie case of age discrimination.  Turlington, 135 F.3d at 1432–33 (failure to satisfy any of the four elements of the prima facie case is fatal to a claim of discrimination).

          **(3)    Plaintiff has established that he was qualified to perform his duties at NSA PC.**

Plaintiff was clearly qualified to perform his duties as a police officer  because at the time of the alleged discrimination he had been a police officer with NSA PC for nearly seven years, and he passed the new training.  No one has disputed that Plaintiff was qualified for the position.

          **(4)    Plaintiff has not demonstrated that he was replaced by a substantially younger person or that similarly situated younger employees were treated more favorably.**

Plaintiff cannot satisfy the fourth requirement that a substantially younger person replaced him or that similarly situated, younger employees were treated more favorably.  Initially, nowhere has Plaintiff alleged that a substantially younger person actually replaced him.  Additionally, Plaintiff has failed to produce evidence that similarly situated younger individuals were afforded more favorable treatment.  *See, e.g.*, <u>Wheeler v. BL Devlp't. Corp.</u>, 415 F.3d 399 (5th Cir. 2005).  Indeed, it is undisputed that everyone in the training session, no matter their age, was treated the same.  Thus, Plaintiff has failed to satisfy the fourth prong of the <u>McDonnell-Douglas</u> standard.  Failure to satisfy any constituent element of the prima facie case is fatal to a discrimination claim.  *See* <u>Turlington</u>, 135 F.3d at 1432–33.

In conclusion, Plaintiff has failed to establish direct or circumstantial evidence of age discrimination, and correspondingly, has failed to establish a prima facie case of age discrimination under the ADEA.  Even if Plaintiff had established a prima facie case, however, the court further finds that Defendant has proffered a legitimate, non-discriminatory reason for its decision to implement the NLW training requirement, and Plaintiff has failed to present evidence to rebut Defendant's non-discriminatory reason.

Plaintiff seems to claim that Defendant's explanation for increasing the training standards due to the September 11, 2001 (9/11) terrorist attacks is not credible because Defendant waited three years after 9/11 to implement the NLW training (Doc. 5, Ex. 1 at 53).  Plaintiff, however, does not rebut Defendant's reasoning for the increase in training and has offered no evidence showing that Defendant's reason was pretextual.  Instead, Plaintiff takes issue with the time frame in which the training was implemented.

A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.  *See* Alexander v. Fulton County, Ga, 207 F.3d 1303, 1341 (11th Cir. 2000).  "Federal Courts do not sit as a super personnel department that reexamines an entity's business decisions.  No matter how medieval a firm's practices, no matter how high handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere.  Rather, the court's inquiry is limited to whether the employer gave an honest explanation of its behavior." Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting Mechnig v. Sears, Roebuck & Co. 846 F.2d 1359, 1365 (7th Cir. 1988).

In support of his motion for summary judgment, Defendant submitted an excerpt from Plaintiff's deposition in which Plaintiff was asked why the training requirements were increased:

Q:      And why were the changes made?

A:      Because of 9/11, was their answer.

Q:      And how did — what did that mean to you when they said that they changed them because of 9/11?

A:      That meant to me that they were a little late.

Q:      And what do you mean a little late?

A:      Well, for them to take three years to take any action after the initial attack.

Q:      Did you think there was any other reason that they made the changes, other than because of 9/11?

A:      I think they wanted a new direction and that the — they wanted a new breed of people in there that were going to do exactly what they told them to do.

Q:      When you say they wanted a new breed of people, what do you mean?

A:      They wanted younger people.  And I had already seen a pattern that the older people were being harassed out.

Q:      Why do you think they wanted a new breed?

A:      I think they wanted younger people.

Q:      And why do you think they wanted younger people?

A:      Probably for less salary and they could train them the way they wanted to.

> Q:     What made you think that they were making these changes because they wanted younger people?
>
> A:     Well, I think when they found out they were going to be able to hire 25 or 30 new policemen, that they could start a new course.
>
> Q:     Was it something they did or told you that made you think they wanted younger officers?
>
> A:     Well they told me that my 27 years and my age didn't matter to them.
>
> Q:     Who told you that?
>
> A:     Mr. Nobles.  He's gone.  He was the security director.  He was a librarian who had no law enforcement or security credentials at all.

(Doc. 5, Ex. 1 at 53).

It appears from Plaintiff's testimony that he is claiming that Defendant increased their training requirements to force the older employees to either quit or retire.  Defendant, however, has submitted the affidavit of Patrick K. Hall, in which Mr. Hall states that the increases in security and training were due to a demand from Washington, D.C. and were in response to the 9/11 attacks (Doc. 9, Ex. 5 at 2).  This is a plausible reason for the increase in training, regardless of the length of time Defendant took to implement the new training.  Although Plaintiff has speculated as to Defendant's true motivation, he has not met his burden of proving that Defendant's explanation is a pretext for age discrimination.  Clearly, the terrorist attacks of 9/11 would motivate a reasonable employer, such as the Army, Navy, Air Force, or Marines to tighten the security of their property and increase the training of its security officers, and Plaintiff has failed to "meet that reason head on and rebut it." See Alexander, 207 F.3d at 1341.  Plaintiff cannot succeed by simply quarreling with the timing of Defendant's response to the 9/11 attacks.  Furthermore, Plaintiff admitted in his deposition that he was told by his employer that "his age [Plaintiff's] didn't matter to them."  (Doc. 5, Ex. 1 at 53).

In sum, Plaintiff has failed to show that a genuine issue of material fact exists as to whether the alleged increase in training was discriminatory due to his age, and further has failed to rebut Defendant's reasoning for increasing the training standards with evidence establishing that the reason was not legitimate, but a pretext for discriminating against older police officers.

2.     Disparate Impact

The Supreme Court has held that the ADEA authorizes disparate impact claims; however, "[t]wo textual differences between the ADEA and Title VII make it clear that even though both

statutes authorize recovery on a disparate-impact theory, the scope of disparate-impact liability under ADEA is narrower than under Title VII." Smith v. City of Jackson, 544 U.S. 228, 240 (2005). Due to specific language in the ADEA, a disparate impact claim cannot succeed where the defendant's action was based on a reasonable factor other than age. *Id.* at 240–42. That is, "certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group." *Id.* at 241. Further, "it is not enough to simply allege that there is a disparate impact on workers, or to point to a generalized policy that leads to such an impact." *Id.* "Rather, the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Id.* (quoting Wards Cove Packing Co., Inc. v. Atonio, 490 U.S. 642, 656 (1989) (quoting Watson v. Forth Worth Bank and Trust, 487 U.S. 977, 994 (1988))).

Initially, Plaintiff has failed to demonstrate that Defendant's employment practice causes a disparate impact on older officers. *See* In re Employment Discrim. Litigation, 198 F.3d 1305, 1311 (11th Cir. 1999) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(I)). "To 'demonstrate' means to 'meet[] the burdens of production and persuasion.'" *Id.* (quoting 42 U.S.C. § 2000e(m) (1994)). "In other words, in order to surmount the first hurdle in a disparate impact race discrimination case, the plaintiff must make out a prima facie case 'that [a] facially neutral employment practice ha[s] a significantly discriminatory impact.'" *Id.* (quoting Connecticut v. Teal, 457 U.S. 440, 446, 102 S. Ct. 2525, 2530, 73 L. Ed. 2d 130 (1982)). As the Supreme Court explained, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 994, 108 S. Ct. 2777, 101 L. Ed. 2d 827. In the instant case, Plaintiff has done little more than point out that some of the older officers suffered physical injuries as a result of the NLW training (*see* Doc. 1); thus, he has failed to sufficiently demonstrate that an actual disparate impact exists.[9]

---

[9]Although Plaintiff submitted an undated affidavit from Michael P. Woullard, stating that "over 40 Officers" have resigned "within the last 36 months," the affidavit does not establish that a disparate impact exists because it does not indicate the age of those persons who resigned, nor does it specifically link the resignations to the new training requirements (*see* Doc. 13 at 39). Indeed, the affidavit suggests that the resignations were due to "gross mismanagement" by "upper-level management" (*id.*).

Moreover, the court concludes that Defendant's decision to impose more rigorous training requirements, in response to the 9/11 terrorist attacks, was a decision based on a "reasonable factor other than age."  Defendant's decision was in response to the legitimate goal of tightening the security of its property.  Accordingly, liability against Defendant is precluded, because even if a disparate impact was shown to exist, it is attributable to a reasonable factor other than age.  Thus, Plaintiff has failed to establish a claim of disparate impact.

      D.     Title VII Retaliation Claim

Finally, again construing Plaintiff's complaint liberally, he appears to claim that Defendant retaliated against him for filing an EEOC complaint by denying him the opportunity to participate in VERA SIP (Doc. 12 at 3).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) there was some causal relation between the two events.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action.  Id. at 1266.  If that burden is met, Plaintiff then bears the ultimate burden of proving, by a preponderance of the evidence, that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. Id.

Defendant has submitted an affidavit of Patrick K. Hall, in which Mr. Hall explains Defendant's reasons for refusing to give Plaintiff a cash buyout of his retirement as follows:

> To the best of my knowledge and belief, Mr. Summers and police officer Ivers applied for an early retirement from NSA PC during the Spring of 2006, seeking a cash payment as a separation incentive.  Such early retirement, if approved, prohibits the employing agency to back fill the retiree's position.  The NSA PC Security Department could not afford to lose two police officer positions as doing so would have negatively impacted the ability of the onboard staff to continue to perform its mission.  Therefore, I denied these requests.  Mr. Summers subsequently retired in September 2006.

(Doc. 9, Ex. 5 at 9).

Assuming Plaintiff could establish the first two prongs of a prima facie case of retaliation (in other words, Plaintiff engaged in statutorily protected expression by filing an EEOC complaint, and he later suffered an adverse employment action by being denied a cash buyout), Plaintiff has failed

to establish a causal relationship between the two events.  Furthermore, even if Plaintiff had established a causal relationship, Defendant has given a legitimate non-discriminatory reason for not allowing Plaintiff the opportunity to receive the cash buyout; namely, that granting the buyout would have prohibited him from back filling Plaintiff's position.  The court does not find, and Plaintiff has not submitted any evidence demonstrating, that Defendant's reason for denying the buyout was pretextual.

III.     CONCLUSION

Upon consideration of Plaintiff's claims and the evidence submitted, the court concludes that there exists no genuine issue of material fact, and that Plaintiff has failed to establish his claims under either the ADEA or Title VII.  Thus, as a matter of law, the Defendant is entitled to judgment in its favor.  Additionally, the court grants Defendant's motion to strike documents filed with Plaintiff's response to Defendant's motion for summary judgment.

Accordingly, it is hereby **ORDERED** that:

Defendant's Motion to Strike (Doc. 16) is **GRANTED**.

And it is respectfully **RECOMMENDED** that:

1.      Defendant's Motion for Summary Judgment (Doc. 8) be **GRANTED**.

2.      Plaintiff's Cross Motion for Summary Judgment (Doc. 12) be **DENIED**.

3.      Judgment be entered by the clerk in favor of Defendant.

At Pensacola, Florida this <u>29th</u> day of February 2008.

<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**